## Berberich v. Pennsylvania Turnpike Commission

Lee C. McCandless, for plaintiffs.
Willis A. McDonald, for defendant.

SHUMAKER, P. J., March 22, 1956.—This matter is before the court on exceptions filed by defendant to a report of the board of view.

Prior to June 14, 1949, plaintiffs owned a tract of land which consisted of 10.654 acres, situate in Cranberry Township, Butler County, having thereon erected a one and one-half story stone dwelling house. This property was bounded and described as follows: On the north by lands of Sophia Schaudt, on the east for a distance of 662 feet by Legislative Route 246, also known as Highway Route 19 or the Perry Highway, on the south by lands of E. S. Taylor and on the west by lands of the Thornhill Industrial School.

On said June 14, 1949, the Pennsylvania Turnpike Commission formally adopted the resolution fixing and locating the Western Pennsylvania Turnpike Extension from the western terminus of the then existing turnpike at Irwin, Westmoreland County, to a point on the boundary line between the States of Pennsylvania and Ohio.

Subsequent to June 14, 1949, in November of 1949, the contractor for the building of the turnpike entered on to the condemned property of plaintiffs and the Commonwealth tendered to plaintiffs an amended bond on February 23, 1950, the original bond having incorrectly designated the wrong parties as property owners. The original bond has designated the parties as George and Lorenz Berberich rather than George and Wilhelmina Berberich.

The commission by its resolution condemned in fee 4.301 acres from the extreme western portion of plaintiffs' land, above described, said condemned portion being bounded on the north 167.46 feet by lands of Sophia Schaudt, on the east 780.05 feet by other lands of plaintiffs, on the south 305.08 feet by lands of E. S. Taylor and on the west 887.75 feet by lands of the Thornhill Industrial School.

On September 29, 1950, the Pennsylvania Department of Highways relocated Legislative Route 426, known as Highway Route 19 or the Perry Highway, in order to "tie into" the Perry Highway Interchange of the Pennsylvania Turnpike which was located on the land condemned from the Thornhill Industrial School.

The turnpike commission built a road wholly on the condemned lands of plaintiffs and granted an easement to the Pennsylvania Department of Highways over certain lands condemned for a highway access to the Perry Highway.

Subsequent to the completion of the turnpike and the Perry Interchange, on or about July of 1952, the turnpike commision erected a woven wire fence, wholly on its own property, for a distance of approximately 780 feet along the line of lands retained by plaintiffs.

Plaintiffs petitioned for the appointment of a board of viewers, which board was duly appointed by this court, and after view and hearing, said board filed its

report on September 13, 1955, awarding plaintiffs the sum of $29,000 as the amount of their damages, which report set forth that the board took into consideration in arriving at said figure the damages for the land of plaintiffs actually taken, consequential damages, delay in payment and for any other cause, matter or thing whatsoever of every kind or nature arising therefrom in the construction and erection of the Pennsylvania Turnpike Extension.

The exceptions now before the court were then filed in behalf of the turnpike commission.

As stated by counsel for the turnpike commission, the sole question before the court is:

"When the Turnpike Commission condemns lands in fee and subsequent to the condemnation builds an access public highway to its Interchange on the lands which it had previously condemned, and erects a fence on its own lands barring the plaintiffs (adjoining property owners) from access to said public highway, is the denial of this right to the plaintiffs consequential damages which are recoverable by the plaintiffs in a proceeding against the Pennsylvania Turnpike for the original taking of the plaintiffs' land?"

The board of view in their report finds as a fact that the only highway which bordered plaintiffs' property prior to June 14, 1949, was the then existing Perry Highway, also known as Legislative Route 246 or Pennsylvania Traffic Route 19, but they also find as a fact that after the condemnation date, namely, on September 29, 1950, this highway was relocated and plaintiffs did not have accessible road frontage on the western portion of their property until that date.

The board found as a conclusion of law that plaintiffs had a legal right to access to the new road built on the lands condemned by the turnpike commission and denial of access because of the erection of a high woven wire fence by said commission was consequen-

tial damages for which plaintiffs were entitled to recover.

The question raised by the exceptions now before us is admittedly a very difficult one and this court has been unable to find any case involving this very problem to help or guide us in the decision we are now called upon to make.

The first question involved is the date that is to be considered in the fixing of the damages occasioned by the condemnation. On this point there seems to be little doubt that the date of the adoption of the resolution and approval by the Governor, namely, June 14, 1949, is the condemnation date for the Western Extension of the Pennsylvania Turnpike, and that all matters pertaining to the condemnation are fixed as of said date.

In the case of Lakewood Memorial Gardens, Inc. Appeal, 381 Pa. 46 (1955), a similar problem was before the Supreme Court of Pennsylvania, in which case it was the turnpike commission's contention that the taking involved occurred upon the adoption of the resolution of condemnation on June 14, 1949, while the property owner asserted that the appropriation did not take place until June 11, 1950, the date the commission's bond was delivered to Lakewood to secure payment of the damages due. The viewers concluded that the time of taking was the date of the passage of the condemnation resolution and expressly stated the same in their report. The lower court confirmed the report of viewers and the award of damages, and the appeal was taken to our highest tribunal in our Commonwealth. The opinion of the court in said case, written by Mr. Justice Jones, stated:

". . . we think it is both logical and just to conclude that the Commission's formal adoption of the condemnation resolution which set forth the location of the proposed turnpike extension by description and plans,

approved by the Governor and the Department of Highways, constituted an appropriation of the indicated properties."

The Supreme Court affirmed in the Lakewood Case the lower court, stating:

"The giving of a bond, as required by Article XVI, Section 8, of the Pensylvania Constitution, to secure just compensation to an owner for property 'taken, injured or destroyed' in an exercise of eminent domain, is, of course, a prerequisite of the condemnor's right of entry. In constitutional contemplation, it is the entry which constitutes the 'taking, injury or destruction' before which compensation for the affected property must be paid or secured. The act of condemnation, however, may, and frequently does, take place sometime before actual entry upon the appropriated property. In such instance, after there is a physical entry, the date of the taking relates back to the date of the ordinance or resolution of condemnation."

The opinion further states, page 56:

"More precisely speaking, the act of condemnation is a 'constructive appropriation' (see Witman v. Reading, supra); it is that event to which 'the taking' relates back after there has been an actual physical entry. It is as of that date that the damages to the owner, both for the property taken, injured or destroyed and for detention of payment of the damages, are to be reckoned. The Western Turnpike Extension Act of 1941 plainly recognizes that the condemnation may precede physical entry by the condemnor."

We conclude, therefore, in the case at bar, that the condemnation date is the date of the resolution, and that the damages due plaintiffs shall relate back to said date.

The general rule in condemnation proceedings is that the Commonwealth is not liable for consequential damages unless the same be connected with an actual

taking of land of the property owner involved, regardless of how little land is taken. Here in this case there is an admitted taking of 4.301 acres of plaintiffs' land, and the court has no difficulty in holding that for certain types of consequential damages, such as allowed by the board of view in this case, in "making petitioners' land less quiet and desirable for residence" and the "noise and fumes from the Pennsylvania Turnpike Extension" may be considered in determining the fair market value of the property of plaintiffs as affected by the condemnation or the taking: Johnson's Petition, 344 Pa. 5; Puloka v. Commonwealth, 323 Pa. 36.

The Act of May 16, 1940, Extra Session, P. L. (1941) 949, sec. 6, 36 PS §653e(k) provides: "All public or private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in their original condition, as nearly as practicable, or adequate compensation made therefor out of funds provided under the authority of this act."

This section quoted is taken from the act of assembly dealing with turnpikes and would seem to indicate that the turnpike commission is liable for consequential damages even though no land is actually taken.

Now, the difficulty in the case before us is that at the time of the condemnation, the matter of the fencing of the land taken in fee by the turnpike commission did not appear in the resolution nor the plans. Therefore, applying the date of resolution as the time for fixing damages, so-called consequential damages for the erecting of the fence, an apparently subsequent project of the commission, could not be considered by the board of view in fixing the damages due plaintiffs. It would be very clear that if a private individual, firm or corporation had acquired from plaintiffs or other persons the 4.301 acres here involved, such could have

been fenced regardless of the inconvenience to plaintiffs. What difference does it make then that the turnpike commission took the fee and desired or determined to fence it and prevent others from crossing? It is to be noted that subsequent to the condemnation of the fee by the turnpike commission that it granted a right-of-way to the Pennsylvania Highway Department over the same that an approach may be constructed to the turnpike interchange, thus relocating said Perry Highway known as Route 19.

While it does not so appear in the viewers' report, it was disclosed in oral argument of counsel that plaintiffs' complaint is that their new frontage on Highway Route 19, as relocated, is spoiled for lot frontage for commercial purposes by reason of the fence.

By way of argument, it was advanced for the commission that said commission did not want the approaches to the turnpike interchanges made into business areas similar to those they have developed at turnpike interchanges on the eastern part of said turnpike. It would appear to this court that this the commission should have the right to prevent since it owns the land in fee.

Under these circumstances, we cannot class the disappointment of plaintiffs in not succeeding in the real estate development business as "consequential damages" for which they would be entitled to recover compensation, nor do we believe that the fact that plaintiffs themselves are now unable to cross a strip of land condemned in fee by the turnpike, entitles them to consequential damages because of the erecting of said fence, since owning the land in fee, the turnpike commission should be able to restrict or limit the use of said land by anyone, including plaintiffs.

We therefore conclude that the board of viewers were in error to consider as an element of damage due

plaintiffs the erection of the fence mentioned in this opinion, erected subsequent to the condemnation.

For purposes of clarification, a copy of the plot furnished the court by counsel for the commission is attached to the original opinion and order.

Hence this

### Order

And now, March 22, 1956, the exceptions are sustained and the case is referred back to the board of view with direction to hold a rehearing in this matter and prepare and file an amended report, awarding damages to plaintiffs consistent with the foregoing opinion.